UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

In re:
CP#1109, LLC,                                               Case no.: 18-25821-MAM
    Debtor.                                               Chapter 11
_____/

## DEBTOR'S PLAN OF REORGANIZATION

    CP#1109, LLC, the debtor and debtor-in-possession, proposes its Plan of Reorganization (the "Plan"), pursuant to 11 U.S.C. § 1121 of the United States Bankruptcy Code.

## INTRODUCTION

    Reference is made to the Disclosure Statement (the "Disclosure Statement") accompanying this Plan for a discussion of, among other things, the major events of this Chapter 11 Case, treatment of Claims against and interests in the Debtor, preservation of litigation claims, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan, and certain related matters.

    All Holders of Claims against and Equity Interest in the Debtor entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

    Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Bankruptcy Rule 3018, and in this Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date (as defined below).

## ARTICLE I - DEFINITIONS

    As used in this Plan, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

    1.1.    "Administrative Creditor" means any creditor entitled to payment of an administrative expense claim.

    1.2.    "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the debtor's estate; any actual and necessary expenses of operating the business of the debtor, including loans or other advances to the debtor in possession, and all allowances of compensa-

tion or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330 of the Bankruptcy Code; and any fees or charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code.

1.3. "Aircraft" means the Debtor's principal asset is a 2002 six-seat, single-engine, high-wing airplane produced by Extra Flugzeugbau GmbH, tail number N400EX

1.4. "Allowed Claim" means any claim against the debtor, proof of which was filed on or before the claims bar date, or which has been or hereafter is listed by the debtor as liquidated in amount and not disputed or contingent and, in either case, a claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Ru1es, or as to which any objection has been determined by a Final Order. Unless otherwise specified herein, "Allowed Claim" shall not include interest on the principal amount of such claim from and after the petition date.

1.5. "Aviall" means Aviall, Inc. the exclusive supplier of parts manufactured by Continental for the Engine.

1.6. "Bankruptcy Code" means the United States Bankruptcy Code, as amended, and as set forth in Section 101, et seq., of Title 11, United States Code.

1.7. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, having jurisdiction over this Chapter 11 case.

1.8. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to cases pending before the Bankruptcy Court.

1.9. "Chapter 11 Case" means this Chapter 11 case commenced by the Debtor on December 20, 2016.

1.10. "Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured.

1.10 "CRG" means Commerce Realty Group the affiliate of the Debtor that is funding the Plan payments until such time as the Debtor is able to generate revenues from the rental of its aircraft. The Debtor reserves the right to substitute another affiliate entity upon providing adequate information regarding said affiliate entity's financial ability to fund the Plan payments.

1.11. "Confirmation Date" means the date upon which the Bankruptcy Court, District Court or other appellate court shall enter an Order confirming this Plan in ac-

cordance with the provisions of Chapter 11 of the Bankruptcy Code, or if the operation of such Order is stayed, the date upon which such stay expires or is vacated.

1.12. "Confirmation Order" means the Order of the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

1.13. "Continental" means Continental Motors, Inc., the exclusive manufacturer of parts for the Engine.

1.14. "Contested Claim" means any claim as to which the Debtor, or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order.

1.15. "Creditor" means any person that is the holder of a claim against the Debtor, that arose on or before the Petition Date, or a claim against the debtor's estate of any kind, specified in 11 U.S.C. §§ 502(g), 502(h) or 502(i).

1.16. "Debtor or Debtor-in-possession" means CP#1109.

1.17. "District Court" means the United States District Court for the Southern District of Florida.

1.18. "Effective Date" means the first business day of the calendar month following the month in which the Confirmation Order entered by the United States Bankruptcy Court becomes a Final Order.

1.19. "Engine" means the TSIOL 550 series of engine and related parts for the Aircraft which are exclusive manufacturer by Continental.

1.20. "FFA" means the Federal Aviation Administration.

1.21. "Final Order" means an order or a judgment which has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.22. "Impaired Claim" means any class of creditors whose claims are impaired by payments as proposed in this plan, in accordance with II U.S.C. § 1124.

1.23. "Interest" means any equity or membership interest in the Debtor.

1.24. "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, any unincorporated organization, or a government or any political subdivision thereof or entity.

1.25. "Petition Date" means December 21, 2016, the date on which an Order for Relief was entered by the Court.

1.26. "Priority Claims" means any claim, other than an administrative expense or a tax claim, to the extent entitled to priority in payment under II U.S.C. § 507(a).

1.27. "Priority Creditor" means any creditor that is the holder of a priority claim.

1.28. "Priority Non-Tax Claim" means any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

1.29. "Priority Tax Claim" means any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

1.30. "Rejected Contract" means any unexpired lease or executory contract not assumed in the Plan.

1.31. "SE Aero" means Southeast Aero Services, Inc., a FAA registered "Repair Station under Title 14

1.32. '"Tax Creditor" means any creditor that holds a tax claim.

1.33. "Unimpaired Class" means any class of creditors whose claims are not impaired under this Plan in accordance with 11 U.S.C. § 1124.

1.34. "Unsecured Claim" means claims other than administrative expense claims, secured claims, priority claims, and tax claims.

1.35. "Unsecured Creditor" means any creditor that is the holder of an unsecured claim.

## ARTICLE II - TREATMENT OF NON-CLASSIFIED CLAIMS - ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

Pursuant to §1123(a)(1), administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8) are not classified.

2.1 "*Allowed Administrative Expense Claims*" under § 503 of the Code shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. The Administrative Claimants are counsel for the Debtor, Gary Murphree and AM Law. Administrative claims as allowed will be paid in full on the Effective Date of the Plan or as otherwise agreed by the holders of such claim. The Debtor estimates that Allowed Administrative Expense Claims shall be $30,000.

2.2 "*Allowed Priority Tax Claims*" under § 1129(a)(9)(C) shall receive, at the sole discretion of the Debtor, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid

4

amount of such Allowed Priority Tax Claim in Cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; (B) as provided in section 1129(a)(9)(C) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at 6% from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtor and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

The Debtor estimates allowed priority claims of $0.00

2.3    "*United States Trustee Fees*" required to be paid by 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  All U.S. Trustee Fees owing as of the Effective Date shall be paid on or before such date.  The Debtor shall continue to pay fees based upon quarterly disbursements until such time as the Court enters an Order closing the case. Based upon estimated disbursements through entry of an Order closing the case, quarterly US Trustee fees should be $325.

### ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS AND DESIGNATION AS IMPAIRED OR UNIMPAIRED

3.1    Pursuant to § 1123(a)(1) and (3) of the Bankruptcy Code, all claims and interests, except for §§ 507(a)(2) and (a)(8) priority claims treated in Article II above, are classified and afforded the following treatment under the Plan.

"*Class 1*" consists of the **Allowed Secured Claim of Salem Five** in the approximate amount of $234,379.73 as of May 2019.  The Debtor shall continue making its monthly payment of $2,902.48 in the ordinary course.

Class 1 is unimpaired under the Plan.

"**Class 2**" consists of holders of Allowed Unsecured Claims of non-insiders.  The filed claims before objections have been filed by the Debtor are:

| | |
|---|---|
| IRS – POC 1 | $  4,290.00 |
| Dismore & Shohl LLP – POC 2 | $24,695.63 |
| Continental – POC 3 | $16,321.71 |
| SE Areo – POC 4 | $29,524.20 |

5

On the Effective Date, the Debtor shall commence monthly payments for 36 months that pays each Allowed Claim in full plus postpetition from Petition Date at the Florida judgement rate in effect on the Petition Date of 6.09%, or at such other rate as the Court may determine is appropriate under the circumstances. On claims that are disputed and not resolved as of the Effective Date, the Debtor shall make the payment on the disputed claim in the full amount as filed payable into the Trust Account of Debtor's counsel. Upon entry of a Final Order determining the allowed amount of the disputed claim, counsel for the Debtor shall pay the amount due the then Allowed Claim from funds in trust and the Debtor shall commence making the payments directly to the Holder of the Allowed Claim. The estimated monthly payment if all claims are Allowed at the filed amount is $2,279.57.

The Debtor is currently Plaintiff in two lawsuits, see summary of lawsuits below, should the Debtor recover monetary damages in the lawsuits, the Debtor shall use the litigation recovery to satisfy the Allowed Class 2 Claims. In short, in the event the Debtor recovers litigation funds, the Debtor shall prepay the Allowed Class 2 Claims with interest.

Upon completion of the above payments to Holders of Allowed Class 2 Claims, any and all claims of each Holder against the Debtor shall be satisfied and extinguished.

Class 2 is unimpaired under the Plan.

"*Class 3*" consists of ***holders of Allowed Unsecured Claims of insiders.*** Class 3 claims consists of:
Commerce Realty Group                                              $309,439.49
Martin E. O'Boyle                                                  $ 50,000.00

The Debtor shall not make any distribution to a Holder of an Allowed Class 3 Claim until the completion of the payments to Class 2 under the Plan.

The Debtor is currently Plaintiff in two lawsuits, see summary of lawsuits below, should the Debtor recover monetary damages in the lawsuits, the Debtor shall use the funds to satisfy the Allowed Class 2 Claims in full with said recovery. In short, in the event the Debtor recovers funds, the Debtor shall prepay the Allowed Class 2 Claims with interest.

Upon completion of the above payments to Holders of Allowed Class 2 Claims, any and all claims of each Holder against the Debtor shall be satisfied and extinguished.

Class 3 is deemed unimpaired under the Plan.

"*Class 4*" consists of ***holders of equity interests*** in the Debtor. Class 4 interests are: CRO Realty Inc. 99% and 8819 Forrest English Inc. 1%.

CRO Realty Inc. 99%

Class 4 is deemed unimpaired under the Plan.

<u>Default</u>.  Unless otherwise specifically set forth above, in the event of any non-monetary default by the Debtor of any provisions set forth in 3.1 above or pursuant to any underlying loan documents or other agreement(s) between the Debtor and such Claimant, the Claimant shall provide the Debtor with notice of such default, by electronic mail to the Debtor's counsel, Gary Murphree, Esq. at pleadings@amlaw-miami.com and gmm@amlaw-miami.com (the "<u>Default Notice</u>").  The Debtor shall be afforded ten (10) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such non-monetary default.  The Claimant shall not take any further action(s) against the Debtor, including without limitation, proceeding against the Debtor in a court of competent jurisdiction, unless the cure period referenced herein has expired.

### ARTICLE IV - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

There are no existing executory contracts are leases to the Debtor's knowledge.  If any entity claims to have such a contract or lease, said contract or lease is deemed rejective.  Any claim based on the rejection of a rejected contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

### ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.1    Currently due to the inability of the Debtor to obtain parts necessary to repair the Engine and make the Aircraft airworthy, the Debtor is not generating rental revenues.  The Debtor is pursuing all options to obtain the parts including: (i) obtaining the parts from Continental and/or Aviall through the pending Adversary Proceeding; (ii) attempting to purchase the parts from a company in Germany after Continental ship all of such parts there; and (iii) making inquiries of all owners of similar engines and suppliers of aircraft parts to determine whether the necessary parts are available.  Once the parts are obtained the Debtor estimates it will take six months to repair the Aircraft and have the Aircraft sufficiently tested in test flights before the Aircraft will be available for rental to affiliates of the Debtor in the course of their real estate business which is acquisition and management of commercial real estate properties throughout the Eastern United States.  The Debtor estimates revenues on an hourly rate at $600 per hour with operational costs including pilot salaries etc. are likely $380 leaving a $220 per hour profit margin.  The Debtor believes the Aircraft will be sufficiently utilized to allow the Debtor to fund all Plan payments.  Until such time as the Aircraft is operational, all Plan payments and other operating expenses of the Debtor shall be funded through loans from CRG.  These advances shall add increase the current existing debt to CRG of $309,000 but no repayments of said debt shall be made by the Debtor until Class 2 claims are paid in full.
fund such shortfalls up the amount of their equity interest in the Debtor.  The estimated projections over the 36-month Plan are set forth on **Exhibit B** to the Disclosure Statement.

5.2     Upon the Effective Date, existing equity in the Reorganized Debtor shall continue.

## ARTICLE VI - PROCEDURE FOR RESOLVING CONTESTED CLAIMS

6.1     The Debtor expects to object to certain claims.  See **Exhibit A** to the Disclosure Statement for details.  Unless otherwise ordered by the Bankruptcy Court, Debtor shall litigate to judgment, settle or withdraw objections to contested claims after confirmation, if necessary.

6.2     Should any payment become due under the Plan on a contested claim, such payment shall be held in the Debtor's counsel's trust account pending the resolution of contested claim.  Upon final resolution of the contested claim, the Claimant shall be paid a pro rata distribution of the funds held based on the percentage of the claim allowed, if any.

## ARTICLE VII
## DISCHARGE AND RELEASES

8.01    <u>Releases of Debtor and Others.</u>  As of the Effective Date, except for the Debtor's express obligations respecting distributions herein and claims reserved by the Debtor to be pursued under this Plan, the Debtor and the Reorganized Debtor, respective present and former subsidiaries, predecessors, successors, are hereby released and discharged from any and all claims, causes of action, demands, liabilities, losses, damages, whether known or unknown, under federal, state or other law, that arose prior to the Effective Date in connection with any matter arising from or relating to the Debtor, except for any acts or omissions resulting from fraud or gross negligence.

8.02    <u>Discharge.</u>    On the Effective Date, the Debtor shall be discharged from all of its debts and obligations that occurred prior to confirmation, except for those debts and obligations preserved in this Plan or pursuant to separate Order of the Court.

8.03    <u>Injunction.</u>    Commencing on the Effective Date, all persons who hold or who have held a claim or interest in the Debtor shall be permanently enjoined from commencing or continuing any action, employment of process, or act to collect, offset, avoid or recover any Claim against the Debtor, except as otherwise provided under the Plan, or by Order of the Bankruptcy Court.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

9.01    <u>Vesting of Assets</u>.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the Estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

9.02　Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.03　Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.04　Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE IX - PROVISION TO INVOKE
## CRAMDOWN PROVISION IF NECESSARY

Since there are no impaired classes, the Debtor does not anticipate having to satisfy the applicable requirements of 11 U.S.C. § 1129(b). For purposes of seeking confirmation under the cramdown provision of the Code, should that alternative means of confirmation prove to be necessary, the Debtor reserves the right to modify or vary the terms of the claims of the rejected classes, so as to comply with the requirements of 11 U.S.C. § 1129(b).  For a complete discussion of the cramdown see Article X(8) – CRAMDOWN in the Disclosure Statement.  Cramdown refers to the Debtor seeking confirmation of the Plan over a rejecting class of creditors.

## ARTICLE X - GENERAL PROVISIONS

10.1　Definitions.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

10.2　Disbursing Agent.  All distributions under the Plan shall be made by the Debtor with funds from the Debtor's debtor-in-possession bank account except those distributions as the case may be from the Debtor's attorneys trust account related to formerly disputed but subsequently Allowed Claims.  The Debtor shall not be required to give any bond, surety or other security for the performance of its duties as disbursing agent unless otherwise ordered by the Bankruptcy Court.

10.3　Delivery of Distributions and Undeliverable Distributions.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy

Court, or on the books and records of the Debtors or their agents, or in a letter of transmittal, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  In the event that any distribution to any holder is returned as undeliverable, or in the event that any holder affirmatively indicates that it refuses such payment(s), no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made.  Thereafter, the amount represented by such undeliverable distribution shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor and their property.

10.4    Time Bar to Cash Payments.  Checks issued by the Debtor in respect of Allowed Claim shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

10.5    Exemption from Transfer Taxes.  Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments, executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

10.6    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.7    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

10.8 <u>Controlling Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

10.9 <u>Retention Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 case for the purposes of determining any and all objections to the allowances of claims; determining any and all applications for compensation for professional and similar fees; determining any and all applications, adversary proceedings, and contested or litigated matters before the Bankruptcy Court or pending on the Confirmation Date; resolution of any tax issues through negotiation and approval of the Bankruptcy Court or by the filing of adversary complaints if deemed necessary; and construing and enforcing the provisions of the Plan relating to the payments and distributions to be made by the Debtor on or after the Confirmation Date.

10.10 <u>Modification</u>. The Debtor reserves the right to modify the terms of the Plan before or at confirmation to the extent such modifications do not adversely affect treatment of any class of claims or interests. Specifically, the Debtor reserves the right to shorten the life of the Plan or increase the interest rate payable on Allowed Secured Claims to the extent such modifications are deemed necessary by the Court for purposes of determining whether the Plan is fair and equitable. Debtor also reserves the right to make whatever technical modifications and clarifications may be necessary to effectuate the purpose of the Plan.

Respectfully submitted this May 13, 2019.

By:/s/ William Ring
Vice President Managing Member
CRO Realty Inc.


AM LAW
Counsel for Debtor
7385 SW 87th Avenue, Suite 100
Miami, FL 33173
PH: 305.441.9530
FX: 305.595.5086
Email: gmm@amlaw-miami.com; pleadings@amlaw-miami.com
By: /s/ Gary Murphree            /
Gary Murphree, Esq.
FBN: 996475
Brandy Gonzalez-Abreu, Esq.
FBN: 017685